```
                    UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF NEW YORK


JOHN SACCHI,
     Individually and on behalf      :  ELECTRONICALLY FILED
     of all others similarly         :
     situated,                       :
                                     :
     Plaintiffs (collectively,       :
         "Consumers"),               :  Hon. _____
vs.                                  :
                                     :  Civ. No. 25-7632
                                     :  CLASS ACTION
JPMORGAN CHASE BANK, N.A.,           :  COMPLAINT
JPMORGAN CHASE & CO., and            :
DOES 1 through 10, inclusive,        :
                                     :  JURY TRIAL DEMANDED
     Defendants (collectively,       :
         "Company").                 :
_____ :
```

**JPMORGAN CHASE BANK FRAUDULENTLY SOLICITS
$750.00 SAPPHIRE RESERVE CREDIT CARDMEMBERSHIPS BY
PROMISING CREDITS THAT IT INTENDS NOT TO PROVIDE—AND THEN
REFUSES COMPENSATION WHEN PRE-LITIGATION REQUESTS ARE MADE
DESPITE LAWSUITS AGAINST CHASE ALLEGING SIMILAR ACTIVITY**

Plaintiff John Sacchi (**"Consumers"** or **"Plaintiffs"**), Individually and on behalf of all others similarly situated, hereby allege as follows:

1. Defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (collectively, **"JP Morgan Chase"**) are corporations incorporated in Delaware and headquartered in the Borough of Manhattan in New York City that market and sell, *inter alia*, banking services and credit cardmemberships throughout the world.

2. JP Morgan Chase, along with the Doe defendants, are collectively referred to here throughout interchangeably as **"Defendant," "Defendants,"** or **"Company."**

3. Plaintiffs bring this action to challenge the Company's ongoing knowing and systematic practice in fraudulently inducing consumers to purchase Company credit cardmemberships and charge specified purchases on the Company-issued credit card.

4. Plaintiff rejected the purported class action "ban" that Company attempted to effect as a means of evading legal accountability for its systemic fraudulent conduct.

5. All of the claims asserted herein arise out of Company's activity and are a common fact pattern as to each member of the Class defined below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1332(d)(2) in that the matter in controversy of all class members' claims together aggregate more than $5,000,000, exclusive of costs and non-breach interest, the number of class members exceeds one hundred, and Consumer resides outside New York.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to

the claims referenced herein occurred in and/or were targeted to cause damages in this District where JP Morgan Chase's principal place of business is situated and where JP Morgan Chase, *inter alia*, solicited and issued the subject credit cardmemberships and wrongly denied the promised automatic credits for purchases made, *inter alia*, at specified restaurants and/or for specified products and/or services.  This Court also has jurisdiction over JPMorgan Chase in this action because JPMorgan Chase markets and sells the subject cardmemberships to New York residents.

## OTHER PARTIES

8.    Plaintiff (**"Consumers"** or **"Plaintiffs"**) is an adult male who had purchased a credit cardmembership from Company and then charged (i) a purchase at a restaurant for which Company promised a $150.00 credit and (ii) a purchase for an on-line music service for which Company promised a monthly credit in reliance on Company's subject promises of credits.

9.    Except as described herein, Plaintiffs are ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names.  Plaintiffs will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

10. At all times herein mentioned, JPMorgan Chase, and/or the Doe Defendants, and each of them, were an agent or joint venturer of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

11. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

12. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

**FACTUAL ALLEGATIONS**

13. Plaintiff was solicited by Company in or about the summer of 2025 to purchase a one-year Company credit cardmembership for seven hundred and fifty dollars ($750.00) in reliance upon the Company's promises, *inter alia*, to automatically provide credits for, *inter alia*, purchases at specified restaurants for which Company promised a $150.00 semi-annual credit and purchases for an on-line music service that were made on the Chase Sapphire Reserve credit card.

14. Company has a history—as alleged in prior lawsuits—and continuing and ongoing practice of soliciting the purchase of Company credit cardmemberships and the charging of specified purchases on Company credit cards by promising that the subject purchases will be "automatically" "credit[ed]," reimbursed, and/or otherwise not due, payable, nor paid by the cardmember if certain conditions are met.

15. Plaintiff relied on Company's promises by applying for cardmembership. Plaintiff was granted cardmembership with corresponding account number ending in the four digits of 3930, was charged the Company card's seven hundred and fifty dollars annual fee ($750.00) on July 1, 2025, and then paid it in continuing reliance upon the Company's promises.

16. Plaintiff further relied on Company's promises by making purchases at a Chase-designated restaurant and on-line music services this summer.

17. Company failed to reimburse the specified charges, which Plaintiff was then required to pay as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid for the specified charges instead of the charge being "automatically" "credit[ed]" as had been fraudulently promised by Company.

18. Plaintiff rejected the Company's purported class action ban on August 15, 2025 after Company failed to provide the promised credits despite Plaintiff's pre-litigation requests that the promised credits be provided *sans* legal action **in a recorded telephone call with Company on August 13, 2025** and the filing of earlier lawsuits that alleged similar activity against Company.

19. Company has continually—to the date of this filing—failed to credit the subject charges despite Company being explicitly informed that such charges had wrongfully not been credited by, *inter alia*, Plaintiff's recorded telephone call on August 13, 2025 and numerous other demands by countless other purchases of Sapphire Reserve credit card memberships as evidenced on the Internet by, e.g., the following statements verbatim [except where bracketed text appears]:

   a.   "Got my CSR [Chase Sapphire Reserve card] CSR June 25th. Went to Rays on the River in Atlanta on June 26th which was a restaurant on the CSR very selective list I did my researcher before to make sure it qualified.  I waited 6 weeks for the $150 credit, it never came so I called Chase and the first person told me the restaurant is correct and to wait until the 8 week mark for the

credit to show. It did not show so I called again and the person said she would send it up higher and to expect a reply in 7-10 business days. I got this letter in the mail today 7 business days later. They refused to credit the $150."

       b.    "Thank you so much for posting this. Now I won't be tempted to get the card now  - no matter how many points they offer."

       c.    "This is a significant issue for all of us if you do not get your credit."

       d.    "The credit is worthless to me if I can't count on it 100% when visiting a qualifying restaurant."

       e.    "Honestly the fact that you have to even deal with this is insane. This is specifically why I stayed with my Sapphire Preferred [a different credit card]. Chase is really trying to screw people [ . . . ]."

       f.    "File for arbitration. Chase has to reimburse the fees for this. They will quickly clean up their act when they get the bills for this from the 1000s of redditers who file after reading this. Money makes them get off their a$$ to fix this so make it cost them $$$."

       g.    "I'd probably craft something via chatgpt with inputs of the t&cs of the credit, deceptive marketing, the escalation path you've gone thus far, the unnecessary amount of effort to track and claim the credit with a request for not only the dining credit but XX,XXX chase points, and ultimately Chase needing to save face and do the right thing for the customer." and

       h.    "Chase is always committing daylight robbery on their customers. Pieces of s#@&. 5 years ago, I had my plane ticket cancelled due to "covered medical reasons" (COVID) and filed a claim to get reimbursement as I bought with my Chase Sapphire card then… They told me that the letter from the doctor and my medical reason for canceling was not within their "covered paradigms" Bulls@&$, I tried elevating this but got shut down everytime and wasn't going to waste my precious breath arguing with them while I was fighting for my life."

## **CLASS ALLEGATIONS**

20.    Consumer brings all his Causes of Action on his own behalf and on behalf of the Class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

7

This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule.  The Class is defined as follows:

> All individuals who within the past six years made one or more charges on a JP Morgan Chase-issued credit card in the United States for products and/or services, which charge(s) was/were required to be automatically credited pursuant to Company's promises, but was/were not.
>
> Excluded from the Class are: (1) employees of the Defendants, including their officers or directors; (2) Defendants' affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.

21.  Plaintiff does not know the exact number of Class members because such information is in the exclusive control of the Defendants.  However, Plaintiff believes that due to the nature of the trade and commerce involved and the identical language utilized in Company's solicitation for credit cardmemberships, Class members are sufficiently numerous, most likely many thousands of consumers, such that joinder of all Class members is impracticable.  The information as to the identity of the Class members can be readily determined from records maintained by Company, because all cardmemberships and charges of purchases are recorded in Company's written and electronic records.

22. Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

23. The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances of any Class member, include, but are not limited to, the following:

    a. Did Company fraudulently solicit the purchase of JP Morgan Chase credit cardmemberships by falsely stating that specified purchases on the Company credit cards would be "automatically" "credit[ed]" while intending not to automatically credit such charges?

    b. What is the appropriate measure of damages for Company's wrongful conduct?

    c. Was Company's policy deliberate such that punitive damages may be awarded? and

    d. Are Plaintiff and the Class Members entitled to the injunctive and equitable relief requested herein to enjoin Company's continuing wrongful action?

24. These common questions and others predominate over questions, if any, that affect only individual members of the Class.

25. The claims of the representative Plaintiff are typical of the claims of the Class. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

27. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

28. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

29. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation:  Individual consumers typically lack the resources, ability, and knowledge to legally pursue their respective remedy of a rightful refund *as reflected in the multiple Internet comments posted by Chase Sapphire Reserve cardmembers above*.

## FIRST CAUSE OF ACTION
### (FRAUD)

30. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

31. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would "automatically" receive a "credit" of charges for purchases at a specified restaurant and purchases for an on-line music service for while Company intended not to automatically credit the purchases as promised.

32. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the seven hundred and fifty dollar ($750.00) annual fee for the credit cardmembership that was billed on July 1, 2025.

33. Plaintiff further relied on Company's promise by making purchases at a specified restaurant and for an on-line music service on the Company credit card.

34. Company failed to provide Plaintiff the promised credits for the purchases.

35. Because Company failed to credit the purchases, Plaintiff was thereby required to pay it as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid (i) the $750.00 credit cardmembership annual fee and (ii) the restaurant and on-line music charges, neither of which charge he would have incurred nor paid for had he been aware that Company intended not to automatically credit the specified charges.

36. **Company's wrongful behavior continues to the present.** Company has failed to credit the subject charge despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, a recorded telephone call on August 13, 2025, **the filing of earlier lawsuits that alleged similar activity against Company**, and complaints from multiple Company cardmembers concerning the same subject made directly to Chase and on the Internet.

37. Plaintiff has been damaged thereby.

## SECOND CAUSE OF ACTION
### (VIOLATION OF N.Y. GEN. BUS. LAW § 349: DECEPTIVE ACTS AND PRACTICES)

38. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

39. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would "automatically" receive specified "credits" of specified charges made to the Company-issued credit card while Company intended not to automatically credit the purchases as promised.

40. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the seven hundred and fifty dollar ($750.00) annual fee for the credit cardmembership.

41. Plaintiff further relied on Company's promise by making the specified purchases noted herein.

42. Company failed to automatically credit Plaintiff's charges for the specified charges detailed herein.

43. Because Company failed to credit the specified purchases, Plaintiff was thereby required to pay it as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid (i) the $750.00 credit cardmembership annual fee and (ii) the specified charges detailed herein, none of which charges he would have incurred nor paid for had he been

aware that Company intended not to automatically credit the specified charges.

46. ***Company's wrongful behavior continues to the present.*** Company has failed to credit the subject charges despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, a recorded telephone call on August 13, 2025, the filing of earlier lawsuits that alleged similar activity against Company, and complaints from multiple Company cardmembers concerning the same subject made directly to Chase and on the Internet.

45. Plaintiff has been damaged thereby.

46. Statute provides for payment of a minimum of $50.00 per violation and up to three times actual damages per violation.

47. Statute provides for award of attorneys' fees.

48. Consumer also seeks injunctive relief requiring Company to cease its fraudulent solicitation practices.

### THIRD CAUSE OF ACTION
**(VIOLATION OF N.Y. GEN. BUS. LAW § 350:   FALSE ADVERTISING)**

49. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

14

50. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would receive automatic "credits" for specified charges detailed herein while Company intended not to "credit" the purchases as promised.

51. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the seven hundred and fifty dollar ($750.00) annual fee for the credit cardmembership.

52. Plaintiff further relied on Company's promise by making specified purchases detailed herein.

53. Company failed to credit Plaintiff's credit card account for the specified charges detailed herein.

54. Because Company failed to credit the purchases, Plaintiff was thereby required to pay additional money as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies.  Plaintiff thereby paid for the charges instead of the charges being "credit[ed]" as fraudulently promised by Company.

55. ***Company's wrongful behavior continues to the present.*** Company has failed to credit the subject charge

15

despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, prior lawsuits filed against Company involving similar activity and, upon information and belief, complaints from multiple Company cardmembers concerning the same subject made directly to Company and on the Internet as detailed herein.

56. Plaintiff thereby paid (i) the $750.00 credit cardmembership annual fee and (ii) the charges detailed herein, none of which charges he would have incurred nor paid for had he been aware that Company intended not to automatically credit the specified charges.

57. Plaintiff has been damaged thereby.

58. Statute provides for payment of minimum of five hundred dollars ($500.00) for each violation of the false advertising statute and up to three times actual damages.

59. Statute provides for award of attorneys' fees.

60. Consumer also seeks injunctive relief requiring Company to cease its fraudulent solicitation practices.

### FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

61. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

62. As a result of Company's breach of the agreement to credit the specified charges, Plaintiff suffered damages

16

by paying money for products and services to which he was legally entitled for no financial payment.

63. Plaintiff was also damaged by incurring and paying for the cardmembership annual fee that he would not have paid if Company had not promised to credit the specified charges detailed herein.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate contract breaches and to deter others who may otherwise engage in similar willful illegal and deliberate conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them, to prevent future wrongful contract breaches;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

   10.   Reasonable attorneys' fees; and

   11.   All such other and further relief as the Court deems just and proper, the total of which, less interest and costs, will be greater than $5,000,000.00.

Dated:  Sept. 12, 2025

                              Respectfully submitted,


                              By: __/s/_Stephen J. Simoni__
                              STEPHEN J. SIMONI
                              StephenSimoniLAW@gmail.com
                              **SIMONI CONSUMERS**
                                **CLASS ACTION LAW OFFICES**
                              c/o Jardim Meisner Salmon
                                   Sprague & Susser, P.C.
                              30B Vreeland Road, Ste. 100
                              Florham Park, NJ 07932
                              Telephone:  (917) 621-5795

                              *Counsel for Plaintiff and
                                   the Proposed Class*


## DEMAND FOR JURY TRIAL

     Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on all claims so triable.

Dated:  Sept. 12, 2025        Respectfully submitted,


                              By: __/s/_Stephen J. Simoni__